IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

DAVID MARCIONETTE,

Petitioner,

v.   Case No.: 8:25-cv-3250-TPB-AAS

ORANGE COUNTY SHERIFF'S OFFICE,

Respondent.

_____/

# EMERGENCY MOTION FOR RETURN OF PROPERTY UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)

COMES NOW Petitioner David Marcionette, and respectfully moves this Court for the immediate return of his personal digital property unlawfully seized, transported, and searched in violation of the Fourth Amendment.

Because the seized devices contain irreplaceable evidence necessary for an ongoing civil appeal and the deprivation is causing ongoing, irreparable litigation harm, Petitioner requests emergency relief.

This request is brought pursuant to Fed. R. Crim. P. 41(g). In support, Petitioner states:

**I. JURISDICTION**



1. This motion is brought pursuant to Federal Rule of Criminal Procedure 41(g), which permits "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to seek its return from the Court.

2. Although the underlying criminal matters occurred in Florida state court, federal jurisdiction is proper because Rule 41(g) motions may be filed as equitable civil actions when no federal criminal case is pending, and where the property remains seized by government authorities within this District.

3. The Orange County Sheriff's Office, located within the Middle District of Florida, continues to possess the property at issue.

4. This Court has equitable jurisdiction under Federal Rule of Criminal Procedure 41(g) because:

   A. No criminal case involving these devices is pending in state or federal court;
   B. All criminal matters where the devices were seized have concluded; and
   C. Petitioner seeks only return of property, not suppression for trial.

## II. VENUE AND NON-TRANSFER REQUEST

Venue is proper in the Middle District of Florida, Tampa Division, because Petitioner resides in Pasco County, and no criminal case is pending that would tie venue to Orlando.

Although the seizure involved Orange County personnel, divisional venue is not jurisdictional, and filing in the Tampa Division avoids severe hardship because Petitioner is indigent and cannot travel to Orlando for ongoing litigation.

## NON-TRANSFER REQUEST

Petitioner respectfully requests that the case not be transferred to the Orlando Division under 28 U.S.C. § 1404(a), because:

1. Petitioner is indigent, and travel to Orlando imposes a significant—if not insurmountable—burden on his ability to litigate this case. Divisional venue is not mandated by statute, and filing in Tampa is necessary to avoid the appearance of conflict or entanglement with the Ninth Judicial Circuit, whose personnel, agencies, and institutional actors are directly involved in the events underlying this action.
2. Petitioner does not allege actual bias by any judge or division; this request is made solely to preserve the integrity and neutrality of these proceedings and to prevent overlap with other Ninth Circuit matters involving the same governmental entities and actors. For these reasons, Petitioner respectfully requests that this case remain in the Tampa Division and not be transferred under 28 U.S.C. § 1404(a).
3. Additionally, even if the Court were to consider intra-district transfer, Petitioner asserts that transfer to the Orlando Division would risk (1) inconsistent adjudications with prior Ninth Judicial Circuit matters involving the same institutional actors, and (2) a possibility of prejudice to Petitioner flowing from such transfer—both recognized bases to deny transfer under *Amoco Production Co. v. U.S. Dep't of Energy, 469 F. Supp. 236, 244 (D. Del. 1979)*. The Amoco court emphasized that a petitioner's chosen forum should not be disturbed where transfer could expose the petitioner to institutional or procedural prejudice.
4. That concern applies with particular force here, where the claims directly involve various Orange County agencies and personnel. Petitioner's choice of the Tampa Division should therefore be afforded substantial deference, and transfer would not serve the interests of justice.

## III. INTRODUCTION

This is a simple but urgent petition. The government has held Petitioner's entire digital life—including 20+ years of personal photos, business data, research archives, and dissolution-case evidence—for more than four years, without lawful justification and long after all criminal proceedings concluded.

The continued retention of this property is unlawful, unsupported by any valid warrant, and actionable through Rule 41(g), which protects citizens from unconstitutional seizures and prolonged deprivation of personal property.

Petitioner seeks immediate return of all seized items, and if the devices have been destroyed or disposed of, Petitioner reserves the right to seek monetary relief in a separate civil action.

This motion is not a challenge to any conviction and presents no *Heck* bar under *Heck v. Humphrey, 512 U.S. 477 (1994)*. It challenges only unlawful seizure and continued deprivation of property.

## IV. FACTUAL BACKGROUND

### A. July 28, 2021 – Kentucky Search and Seizure

On July 28, 2021, after Petitioner refused to consent to the Bowling Green officers' taking his "computers and phones," the Bowling Green Police Department executed a search of the residence where Petitioner lived and seized:

- Multiple external hard drives
- A 27-inch iMac
- Petitioner's laptop
- Two cellphones
- Additional digital media

The seizure was purportedly based on a Kentucky search warrant issued upon an affidavit from Detective Jerry Buss. The warrant explicitly authorized seizure only of

digital communication-capable devices (phones, tablets, computers). Petitioner's two 5TB external hard drives:

- cannot transmit or receive data,
- have no network capability,
- are simple storage media only.

Thus the drives were outside the scope of the warrant and illegally seized under:

- *Groh v. Ramirez, 540 U.S. 551 (2004)*
- *United States v. Carey, 172 F.3d 1268 (10th Cir. 1999)*
- *United States v. Medlin, 842 F.2d 1194 (10th Cir. 1988)*

## B. Judge Blackwell's June 8, 2021 Ruling on the 14 Emails

Six weeks before the Kentucky seizure, Judge Alice Blackwell of the Ninth Judicial Circuit (Orange County, Florida) ruled that the 14 emails forming the foundation of the alleged harassment/stalking claim were:

- "Legitimate correspondence," and
- Not capable of constituting stalking or harassment under Florida law.

The Kentucky affiant, however, referenced these same emails as part of the narrative establishing probable cause, relying heavily on an arrest warrant affidavit authored by Detective Justin VanSchoonhoven (now Justin Suarez) of the Orange County Sheriff's Office (OCSO).

## C. Illegal Transport of Property Across State Lines by OCSO Detective

Without lawful authority, Detective Justin Van Schoonhoven (Suarez) transported the seized property—including:

- Silver colored HP Laptop S/N: 5CD0165X71
- Silver colored Apple Mac Computer S/N: C02QP3Q3GG7L
- Blue External Hard Drive S/N: NA7ETDQ5
- Blue External Hard Drive S/N: NA7ETF9F
- Black LG Cellphone SIM Card: 89011203000076692033
- Blue OnePlus Cellphone IMEI: 990017112945981,

from Kentucky to Orange County, Florida, despite having no interstate warrant, no court authorization, and no chain-of-custody justification.

### D. The Florida "Digital Device" Search Warrant Cannot Cure an Illegal Seizure

Upon returning to Florida, Detective Van Schoonhoven (Suarez) applied for a digital device search warrant in Orange County seeking permission to search all previously seized devices.

But courts are clear: A later-issued warrant cannot retroactively validate the seizure of property taken outside the scope of the original warrant—*United States v. Wanless, 882 F.2d 1459 (9th Cir. 1989)*.

Thus:

1. Seizure was illegal;
2. Transport was illegal;
3. The subsequent digital device search was illegal;
4. Property must be returned.

Interstate transport of illegally seized property does not cure the illegality or create a separate constitutional violation.

### E. Devices Still Held by Government

As of the filing of this motion—over four years later—Petitioner's devices have never been returned, despite:

- Completion of criminal proceedings.
- Repeated requests for return of the digital equipment.
- Repeated timely motions filed in the state courts, yet ignored.
- No continuing investigative need.

This constitutes an ongoing deprivation of property in violation of the Fourth and Fourteenth Amendments.

### F. None of the Devices Were Introduced as Evidence in Any Case

Despite the intrusive seizure and search, no evidence from any device was ever:

- filed as an exhibit,
- used in discovery,
- relied upon by any prosecution, or
- used at trial or sentencing.

This is a critical Rule 41(g) factor supporting return of property.

### G. Petitioner Has Repeatedly Requested Return of Property in State Court

Petitioner properly filed three motions in *State of Florida v. Marcionette, 2021-CF-8825*:

- Motion for Return of Property – May 8, 2025
- Second Motion for Return – July 14, 2025
- Amended Motion – November 2, 2025

All were ignored without hearing, despite the criminal case having long concluded. The May 8, 2025 Motion to return Property was timely filed pursuant to FL Statute § 705.105

### H. Emergency Circumstances

The seized iMac and 5TB drives contain critical, irreplaceable digital files, including:

- dissolution-of-marriage evidence,
- financial documentation,
- business records,
- trial exhibits,
- attorney communications,
- materials necessary for an ongoing civil appeal of his state dissolution case.

These files exist as the only triple-redundant copies on:

- the iMac
- the two 5TB drives

Petitioner cannot fully prosecute his appeal or defend ongoing civil litigation without the return of these files.

Thus, continued government retention causes ongoing, irreparable harm.

### V. LEGAL STANDARD – RULE 41(g)

Rule 41(g) provides:

"A person aggrieved by a deprivation of property may move for the property's return. If the court grants the motion, it must return the property…"

A 41(g) motion is appropriate when:

1. Property was unlawfully seized; or
2. The government's retention is unreasonable or no longer justified; or
3. No criminal proceeding is pending; or
4. Equity requires the property be returned.

All apply here.

## VI. ARGUMENT

### A. The Government's Continued Retention Is Unlawful

Criminal proceedings are closed. There is:

- No active investigation
- No pending trial
- No judicial order authorizing continued retention
- No lawful basis to keep Petitioner's property

Possession of property after its evidentiary purpose has ended violates the Fourth Amendment and the property protections of the Fourteenth Amendment.

### B. The Search Warrant Was Invalid Because It Relied on an Arrest Warrant Premised on Legally Insufficient Conduct

Because the affiant's search-warrant affidavit relied upon an arrest warrant that was legally insufficient to establish harassment or stalking—having been premised on email communications already ruled legitimate correspondence—the July 28, 2021 search warrant lacked probable cause to authorize the seizure of the property. As such, the government's continued retention of the devices is unlawful.

This argument attacks only the seizure, not any conviction, and is therefore not barred by *Heck*.

### C. Interstate Transport of Petitioner's Property Was Unlawful

Detective Van Schoonhoven (Suarez) transported digital devices across state lines:

- With no federal warrant

- With no Florida warrant
- With no judicial authorization
- While the Florida court had already ruled the underlying conduct used to grant the Kentucky search warrant was lawful correspondence

Such interstate transport is a Fourth Amendment violation separate and apart from the underlying search.

## D. Rule 41(g) Is Equitable—Not Criminal—and Not Subject to Heck

The Eleventh Circuit and U.S. Supreme Court agree:

- A Rule 41(g) motion is an equitable civil action.
- Heck applies only when success would undermine a conviction.
- This motion does not challenge a conviction or sentence.

It challenges property deprivation, which remains unlawful regardless of any conviction.

Therefore, *Heck* does not apply.

Petitioner does not seek suppression of evidence in any criminal proceeding, and no criminal matter remains pending. The sole relief sought is return of property. None of the seized devices contain contraband, nor has the government ever alleged that they do.

## E. Petitioner Will Suffer Irreparable Harm Without Court Intervention

Petitioner is unable to conduct:

- certain employment activities;
- family record keeping (all of his family pictures are stored on those 5TB HDDs);
- personal archive retrieval;
- ongoing litigation preparation.

The hard drives contain:

- 20+ years of photos
- business archives
- writing
- music
- family data
- research
- court evidence files
- litigation documents

No monetary remedy can restore these personal and sentimental assets.

Equity demands immediate return.

## F. If the Devices Have Been Destroyed, the Court Should Order Immediate Disclosure

Because continued unlawful deprivation creates an ongoing constitutional violation:

- If the property has been destroyed or disposed of
- The government must disclose this immediately
- Petitioner reserves all rights to pursue damages separately

## G. Equity Strongly Favors Return

Rule 41(g) is tailor-made for cases like this.

## VII. MULTIPLE BRIGHT-LINE RULES REQUIRE IMMEDIATE RETURN OF THE TWO 5TB HARD DRIVES

The continued retention of Petitioner's computer equipment—especially the two 5TB external hard drives—violates several independent, bright-line rules of Fourth Amendment and due-process law. Each rule, standing alone, requires return of the

property. Taken together, they leave no lawful basis for continued possession by the government.

A. The Warrant's Text Created a Bright-Line Limit the Drives Do Not Meet

The Kentucky search warrant explicitly authorized officers to seize only "devices capable of electronic communication." External mechanical hard drives are not such devices. They are simple storage media: they contain no Wi-Fi, Bluetooth, cellular, radio, or other transceiver hardware, and cannot independently send or receive any communication.

By its own terms, therefore, the warrant drew a bright line between communication-capable devices (phones, computers, tablets, etc.) and passive storage media like the two 5TB drives. Seizing items that plainly fall on the wrong side of that line exceeded the warrant's scope and rendered the seizure unlawful from the outset.

B. The Hard Drives Were Not in Plain View Under Arizona v. Hicks and Horton

Even apart from the warrant language, the manner in which the drives were found and taken violates the bright-line requirements of the plain-view doctrine.

Under *Arizona v. Hicks, 480 U.S. 321 (1987)*, and *Horton v. California, 496 U.S. 128 (1990)*, plain view applies only when:

1. Officers are lawfully present at the location;
2. They have lawful access to the object itself; and
3. The object's incriminating character is immediately apparent without further search or manipulation.

Those prerequisites are not satisfied here. The two hard drives were:

- wrapped for protection,
- inside a backpack,
- stored in a closet inside the residence.

A wrapped item hidden inside a bag inside a closet is not "in plain view" under any recognized formulation of the doctrine. Officers could not see that the wrapped items were hard drives at all, much less that they were within the class of "devices capable of electronic communication" described in the warrant. Any discovery of their nature required an additional exploratory search beyond what the warrant or plain-view doctrine permits.

At the moment of seizure, officers could not discern the nature, function, or classification of the wrapped items without opening the backpack and unwrapping the contents.

Under *Hicks*, even minimal manipulation of a concealed object converts the encounter into an unlawful search; the unwrapping of these items goes far beyond that threshold.

## C. The Container Rule Prohibits Opening the Backpack Absent Explicit Authority

The illegality is compounded by the container rule. The Supreme Court has repeatedly recognized that closed containers—such as luggage, footlockers, and bags—carry a distinct privacy interest and cannot be opened merely because officers are lawfully in the premises. *United States v. Chadwick, 433 U.S. 1 (1977)*; *Arkansas v. Sanders, 442 U.S. 753 (1979)*.

Here, the backpack that contained the wrapped drives was itself a closed container located in a private residence. The Kentucky warrant did not specifically authorize the opening or search of containers such as backpacks or bags; it limited seizure to a particular class of items ("devices capable of electronic communication"). Opening the backpack, unwrapping its contents, and seizing whatever was inside was an unlawful exploratory search beyond both the warrant and the plain-view doctrine.

Because the drives were discovered only by opening a closed container the warrant did not cover, the seizure violates the container rule as well as the warrant's explicit limitations.

**D. The Subsequent Florida Warrant Is Tainted Fruit of the Poisonous Tree**

Detective Van Schoonhoven later obtained a Florida "digital device" search warrant after transporting the iMac, phones, laptop, and hard drives from Kentucky to Florida. But that subsequent warrant cannot sanitize the original illegality.

The Florida warrant application rests on the fact that officers already had custody of the devices—custody obtained through an overbroad Kentucky seizure that violated the warrant's text, the plain-view doctrine, and the container rule. Under *Wong Sun v. United States, 371 U.S. 471 (1963)*, evidence obtained by exploiting an unlawful seizure is fruit of the poisonous tree and cannot provide a lawful basis for continued retention.

Because the underlying seizure of the two 5TB hard drives was unconstitutional, any later warrant premised on that unlawful possession is equally tainted. The government

cannot bootstrap an illegal seizure into a lawful one by seeking a second warrant downstream.

**E. Post-Prosecution Retention Creates a Separate Due-Process Violation**

Even if the initial seizure had been lawful (it was not), the government's continued possession of Petitioner's property after conclusion of the criminal case violates a separate, bright-line rule applied in return-of-property and due-process cases.

Once a criminal prosecution has ended, courts require the State to do one of two things: either (1) demonstrate a concrete, ongoing evidentiary or statutory basis to keep the property, or (2) promptly return it to its lawful owner. Where the prosecution is over, no forfeiture action has been filed, and the property is not contraband or being held for any pending proceeding, continued retention is treated as unreasonable and incompatible with due process.

Those conditions are met here:

- The underlying criminal proceedings are fully concluded;
- The drives were never used as evidence, never produced in discovery, and never referenced at trial or in any evidentiary hearing;
- There is no pending trial, hearing, appeal, or separate proceeding for which the drives are needed; and
- No statute or order authorizes the County to keep Petitioner's personal equipment indefinitely.

In this posture, the State no longer acts as a neutral custodian of evidence; it becomes an unjustified possessor of property belonging to a private citizen. Due process does not tolerate that status once the criminal case is over and no lawful basis for retention exists.

**F. Ongoing Retention Inflicts Concrete, Compounding Harm**

The two 5TB drives and associated devices are not abstract items. They contain unique, litigation-critical data—triple-redundant evidence for Petitioner's dissolution and injunction matters, financial records, email archives, and materials needed to prosecute and defend multiple active cases and appeals. As days pass, the deprivation of that data continues to impair Petitioner's ability to meet deadlines, prepare filings, and vindicate his legal rights in other courts.

Rule 41(g) is an equitable remedy designed for precisely this scenario: where the government's continued possession of property serves no legitimate purpose and causes real, ongoing harm to the owner.

**G. Taken Together, These Bright-Line Failures Leave No Lawful Basis to Withhold the Drives**

In sum:

- The warrant's own text drew a bright line the drives do not cross.
- The plain-view doctrine cannot justify seizing wrapped items inside a backpack in a closet.
- The container rule forbids the warrantless opening of that backpack and seizure of whatever is inside.
- The Florida warrant is tainted fruit of the original unlawful seizure.
- The criminal case has ended, and no evidentiary or statutory basis exists to continue holding Petitioner's property.
- Ongoing harm to Petitioner's active civil and appellate cases intensifies the inequity of continued retention.

Any one of these grounds would support relief under Rule 41(g). Collectively, they make continued governmental possession indefensible. The black-letter rules governing warrant scope, plain view, closed containers, and post-prosecution retention all point in the same direction: the hard drives and associated devices must be returned.

Accordingly, Petitioner respectfully submits that the Court should grant this Rule 41(g) motion and order the immediate return of the two 5TB hard drives and all other seized computer equipment.

## VIII. RELIEF REQUESTED

Petitioner respectfully requests that the Court:

1. Order immediate return of all digital devices seized on July 28, 2021, including all computers, hard drives, phones, and digital media.
2. Require Respondents to return the devices to Petitioner's home at: 7210 Southwind Dr., Hudson, FL 34667, within 72 hours.
3. Order Respondents to file, within 48 hours, a sworn declaration stating whether the devices:
    - Are still in government custody
    - Have been damaged
    - Have been accessed
    - Have been destroyed
4. Maintain jurisdiction until full compliance is confirmed.
5. Petitioner also requests that the Court set this motion for the earliest possible telephonic or Zoom hearing given the ongoing irreparable harm.
6. Grant any further relief the Court deems just and proper.

## IX. CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of November, 2025, I submitted the foregoing Emergency Motion for Return of Property Under Fed. R. Crim. P. 41(g) and all accompanying filings to the Clerk of Court for the United States District Court for the Middle District of Florida, Tampa Division, for docketing and service pursuant to Fed. R. Civ. P. 5 and 28 U.S.C. § 1915(d).

Because I am proceeding in forma pauperis and service will be effected by the U.S. Marshals Service upon issuance of summons, a copy of this filing will be served upon:

Orange County Sheriff's Office

2500 W Colonial Dr.,

Orlando, FL 32804

(Primary Defendant in Rule 41(g) Action)

A courtesy copy was also sent via email on this date to:

Orange County Attorney's Office
legal@ocfl.net
and

Orange County Sheriff's Office – General Counsel
general.counsel@ocfl.net

I certify that the foregoing is true and correct to the best of my knowledge.

Petitioner respectfully notes that he has attempted in good faith to resolve this matter without burdening the Court. On November 19, 2025, Petitioner provided Orange County a written 72-hour opportunity to voluntarily return his lawfully owned computer

equipment—including the two 5TB hard drives containing irreplaceable litigation data. The County did not respond in any manner. Petitioner regrets the necessity of judicial intervention but has no alternative remedy. The continued withholding of this property is causing ongoing, compounding harm to Petitioner's ability to litigate active cases. Accordingly, Petitioner apologizes to the Court for the need to file this emergency motion and certifies that he has made every reasonable effort to avoid doing so.

Respectfully Submitted,

/s/ David Marcionette
David Marcionette
Pro Se Litigant
7210 Southwind Dr.
Hudson, FL 34667
(407) 627–7334
dmarcionette@msn.com